UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **TRANSOCEAN OFFSHORE USA, INC.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 05-6328** |
| **DAVID CATRETTE** | **SECTION: "K"(4)** |

## ORDER AND REASONS

Before the Court is the issue of whether Plaintiff Transocean and Defendant David Catrette entered into a valid seaman's release. After trial on the merits, the Court hereby finds in favor of Defendant David Catrette, and holds that the release executed on April 8, 2004, was invalid for the reasons assigned below.

The general legal standard for reviewing seaman's contracts is articulated in the following Fifth Circuit opinion:

> Seaman are emphatically wards of the admiralty;...If there is any undue inequality in the terms, any disproportion in the bargain, any sacrifice of rights on one side, which are not compensated by extraordinary benefits on the other, the judicial interpretation of the transaction, is that the bargain is unjust and unreasonable, that advantage has been taken of the situation of the weaker party, and that *pro tanto* the bargain out to be set aside as inequitable...And on every occasion the court expects to be satisfied, that the compensation for every material alteration is entirely adequate to the diminution of right or privilege on the part of the seaman.

*Castillo v. Spiliada Maritime Corp.*, 937 F.2d 240, 245 (5th Cir. 1991).

The burden of proof in establishing the validity of a seaman's release is on the

1

shipowner. *Id.* The seaman's employer must show that the release "was executed freely, without deception or coercions, and that it was made by the seaman with full understanding of his rights." *Garrett v. Moore-McCormack Co.*, 317 U.S.239, 248.

At the same time, the Fifth Circuit has cautioned that "if employers are denied any degree of confidence in the finality of settlement, seaman will lose the option to settle since employers will have little incentive to avoid full-scale trial on the merits." *Borne v. A&P Boat Rentals No. 4, Inc.*, 780 F.2d 1254, 1257 (5th Cir. 1986). Thus, courts should not be "unduly protective of a seaman who has signed a release fully comprehending the nature of his actions." *Petty v. Odysssa Vessels, Inc.*, 115 F.Supp. 2d 768, 770-71 (S.D. Tex. 2000).

With respect to the validity of a seaman's release, courts generally look to four factors:

> 1. Adequacy of the consideration: Was the plaintiff fairly compensated given the extent of his injuries, and the inherent risk of trying the case?
>
> 2. The medical advice available and given to the plaintiff: Was the plaintiff fully advised of his injuries and future prognosis?
>
> 3. The legal advice available and given: Was the plaintiff fully advised of his rights?
>
> 4. The arms length of the parties: Was there overreaching?

*Braxton v. Zapata Offshore Co.*, 684 F.Supp. 921, 922-23 (E.D. Tex. Feb. 23, 1988).

The Court finds that the consideration of $4000 given to Mr. Catrette was not fundamentally inadequate in light of the medical and other evidence available to Transocean at the time of the release. Moreover, the Court finds that there was no fraud, coercion, or overreaching by Transocean or its agents in obtaining the settlement. However, the Court finds that Mr. Catrette was not fully informed of the condition of or future prognosis as to his shoulder

and that Mr. Catrette was not fully advised of his legal rights at the time he executed the release.

**A.     Medical Advice**

During trial it was elicited from Mr. Catrette that an injury to his shoulder occurred sometime in January 2003.[1] Despite intermittent pain, he continued to work for Transocean, periodically receiving anti-inflammatory medication from Transocean's on-site medic. In March 2003, Mr. Catrette was treated by his family physician, Dr. Charles Tompkins, who indicated that his pain might be a result of a tear in his right rotator cuff. At that time, Dr. Tompkins also told Mr. Catrette to inform his employer of the injury. Mr. Catrette, thus, informed Transocean, at which time, an incident report was filled out. Mr. Catrette continued to work for Transocean through December 2003, all the while receiving only anti-inflammatory medication for his intermittent pain. In 2004, after Mr. Catrette had voluntarily resigned from Transocean, he informed Transocean that he was continuing to experience pain in his right shoulder. Mr. Jay Cole, an employee of Shuman Consulting, a claims handling consulting firm, processed Mr. Catrette's claim from this point. In March 2004, Mr. Catrette was flown to New Orleans, Louisiana, so that an MRI could be taken of his shoulder. The appointment was made and paid for by Transocean.

---

[1] Mr. Catrette's testimony at trial that he was injured sometime in January 2003 is not consistent with the Incident Report which places the date of injury in April 2003. The Court notes that the documents submitted to the Court prior to trial did not make it clear that Mr. Catrette was injured in January 2003. However, finding Mr. Catrette's testimony credible and consistent with the record, the Court assumes, for the purposes of this opinion, that Mr. Catrette did incur an injury to his shoulder sometime in January 2003.

Mr. Cole, the claims agent for Mr. Catrette's case, testified during trial that he informed Mr. Catrette in March 2004 that there was no tear in his shoulder. The March 22, 2004, MRI report, in fact, indicates that Mr. Catrette showed evidence of arthritis and a possible articular surface partial thickness tear of the distal tendon. These findings were made by Dr. Thomas Dietz, a radiologist. Dr. Jay Binder, an orthopedic surgeon, also reviewed the MRI, and found evidence of arthritis and "some thinning at the anterior aspect of the distal supraspinatus tendon," but he did not believe it represented a tear because his physical exam[2] of Mr. Catrette indicated good strength and motion in the supraspinatus. *See* Dep. Dr. Jay Binder, at p. 10-11. Mr. Catrette was not shown the MRI Report of Dr. Dietz and was merely informed by Mr. Cole that he had no tear. Moreover, he was not informed that he could ask a doctor of his choosing to review these findings.

Mr. Cole, whom the Court views as credible, did indicate that there was no tear in Mr. Catrette's shoulder, but the Court is troubled by the fact that this was the only communication made to Mr. Catrette regarding the March 2004 medical evaluation. While the Court notes that Mr. Catrette does not have the requisite sophistication to read and understand the MRI Report, simply conveying that he has no tear in his shoulder is not sufficient to discharge Transocean's obligation to ensure Mr. Catrette was fully informed of his medical condition. It was clear that Mr. Catrette believed that he might have had a tear in his shoulder based on his family doctor indicating that this was the possible cause of his pain, and in fact, there was an indication in the MRI Report that a small tear could be present. While finding that this knowledge would have

---

[2] The Court notes that Mr. Catrette had consumed alcohol prior to his physical examination.

prompted Mr. Catrette to request additional care would be speculative, the Court acknowledges that such a proposition is certainly plausible given Mr. Catrette's specific concerns about a shoulder tear. Moreover, Transocean should have allowed Mr. Catrette to evaluate the medical conclusions as well as offer Mr. Catrette the opportunity to seek a second opinion with a doctor of his choice at Transocean's expense.

**B.     Legal Advice**

For the reasons that follow, the Court also finds that Mr. Catrette was not fully advised of his legal rights such that his consent to release is invalid. Mr. Catrette had no legal representation at the time he executed the release. Mr. Erich Bergdolt, an attorney, was hired by Shuman Consulting, to go over the release with Mr. Catrette at his home before a court reporter. Mr. Bergdolt, however, simply read the contract to Mr. Catrette, stopping on several occasions to ask if Mr. Catrette understood what was being read to him. This recitation was wholly inadequate given Mr. Catrette's level of sophistication. The Court observed Mr. Catrette during trial, and though he has no mental impairment, he had difficulty understanding the questions of defense counsel. Notably, the only portion of the contract explained in laymen's terms was that section prohibiting Mr. Catrette from filing suit against Transocean. There was no explanation of maintenance and cure, indemnity, or any other rights that Mr. Catrette was ostensibly forfeiting in the release.

The Court observes that this presents a close question. However, the Court emphasizes that the burden is on Transocean to show that they discharged their obligations to Mr. Catrette as

articulated in *Garrett*. The Court finds that Transocean has not met its burden. Under no factual circumstances would simply reading the release contract to the seaman and informing the seaman that the medical evaluation showed nothing wrong be sufficient under *Garrett* to effect a valid release. Accordingly,

**IT IS ORDERED** that the release executed on April 8, 2004, is hereby deemed invalid for the reasons assigned above.

New Orleans, Louisiana, on this  29th  day of May, 2007.

                                      **STANWOOD R. DUVAL, JR.**
                             **UNITED STATES DISTRICT COURT JUDGE**